IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 98-51022
_____


KENNETH ALLEN McDUFF,

                                        Petitioner-Appellant,

                        versus

GARY L. JOHNSON, Director,
Texas Department of Criminal
Justice, Institutional Division,

                                        Respondent-Appellee.

                ------------------------
        Appeal from the United States District Court for the
                Western District of Texas, Waco
                        (98-CA-147)
                ------------------------
                    November 17, 1998

Before JOLLY, SMITH, and WIENER, Circuit Judges.


BY THE COURT:[*]

    Kenneth Allen McDuff was sentenced to death after being

convicted of capital murder in Texas state court.  He challenged

his conviction twice at the state level--once in his direct

criminal appeal and next in his subsequent state court habeas

petition.  The United States Supreme Court denied writ of

certiorari in McDuff's criminal appeal and the Texas Court of

Criminal Appeals also denied him state habeas relief.  McDuff next

---

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

came to the federal courts where the district court denied him federal habeas relief. He now applies this court for a Certificate of Appealability ("COA") under the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"), 28 U.S.C. § 2253. McDuff's application for COA essentially asserts two bases for federal habeas relief. First, McDuff argues that the State's expert testimony, that the hairs found on the deceased's body and in her car bore identical characteristics to his hair, was effectively false. Or perhaps it was effectively false. According to McDuff, there is a chance, which was not scientifically available to him at trial, that Mitochondrial DNA testing could exclude him as a source of the hair fragments found on the deceased and in her car. Such a conclusion, McDuff argues, would render the State's expert testimony "false." Second, McDuff contends that he is actually innocent of the crime--"that some one else did it"--and therefore the Due Process Clause of the of the Fourteenth Amendment prohibits an innocent man being put to death. Our review of the record and the law demonstrates beyond the slightest doubt that McDuff has no cognizable federal habeas claim. First, as matters of fact, the record does not support either that McDuff was actually innocent of murder, nor does it support that the hair comparisons made by the State's experts were false. And certainly, the record does not show that the State knew that the hair comparisons made by its experts were false, a fact that McDuff admits. Second, as matters of law, Herrera v. Collins, 506 U.S.

390 (1993) is completely dispositive of his actual innocence claim, as he alleges no constitutional violation in the underlying State criminal proceeding; and Blackmon v. Scott, 22 F.3d 560, 565, appeal after remand Blackmon v. Johnson, 145 F.3d 205 (5th Cir. 1998) is completely dispositive of his false testimony claim, as McDuff admits that he can produce no evidence that the State actually knew of the purported falsity of its expert testimony.

I

As similarly noted by the district court, the facts underlying McDuff's conviction are set out in the petition of the Texas Court of Criminal Appeals:

> Viewed in the light most favorable to the verdict, the evidence at trial established that around 4:OO a.m. on March 1, 1992, the victim, Melissa Ann Northrup was abducted from her work place, the Quick Pak #8 in Waco. Richard Bannister testified that on that same day sometime between 3:30 a.m. and 4:00 a.m. he confronted [McDuff] yards from the Quick Pack #8 in a motel parking lot. [McDuff] was pushing his Ford Thunderbird which was later found to be abandoned there.
>
> Jerry Myers testified that he saw [McDuff] driving the victim's vehicle North on Interstate 35 shortly after 4:00 a.m. with the victim in the passenger seat appearing to be frightened. Shari Robinson testified that at approximately 9:00 p.m. [McDuff] came to the door of her Dallas County home and asked for food. The victim's abandoned vehicle was later found a short distance from Robinson's home.
>
> Charles Linch, a hair comparison expert, testified that a hair found on the victim's body was identical to [McDuff's] hair. Steve Robinson, a Department of Public Safety hair expert, testified that a hair found in the victim's car was similar to [McDuff's] hair. Even Fred Zain, [McDuff's] hair comparison expert, admitted that the hairs found in the victim's car would not exclude [McDuff].

-3-

Immediately prior to the instant offense, [McDuff] had attended Texas State Technical Institute (T.S.T.I) and during that period, had worked at the Quick Pak #8 which is located in McLennan County. In fact, [McDuff] had received training from Aaron Northrup, the husband of the deceased, while employed there. [McDuff] knew that the Quick Pak #8 was very lax on security having no in-store cameras or other security devices. Leonard Bradbury, a Quick Pak supervisor, testified that over $250 was missing from the cash register on the morning that Northrup was discovered missing.

Mark Davis, a fellow T.S.T.I student, testified that on an earlier occasion [McDuff] tried to enlist him to help rob the Quick Pak #8 store. Lewis Bray, another T.S.T.I. student, testified that on three different occasions, [McDuff] told him that he was planning to rob the Quick Pak #8. Bray and [McDuff] went so far as to drive by and "case" the store. [McDuff] also told Bray that a good way to dispose of a body was to slit the abdomen and throw it into water. The deceased's bound and partially nude body was found floating in a water-filled gravel pit not far from where her car was discovered. Part of her lower torso was missing.

Alva Hank Worley testified that [McDuff] told him that there was a good-looking girl at a convenience store that he was going to kidnap. Worley also testified to a signature crime involving the abduction, sexual assault, and murder of Collen Reed by [McDuff].

Mildred Hollins testified that hours before the abduction of the victim [McDuff] was using cocaine, wanted a girl, needed money, planned to rob in order to get some money, and was willing to kill to get what he wanted. After the abduction of the deceased, [McDuff] took flight to Kansas City, Missouri where, at the time of his capture, he was living under an assumed name.

McDuff v. State, No. 71,700 at Slip op. 1-2.

During the guilt-innocence phase, the State offered the testimony of Worley who testified, that in December of 1991, he and McDuff abducted Collen Reed from a car wash in Austin, Texas, and consequently took turns sexually assaulting her in a moving

-4-

vehicle. Worley added that McDuff sexually assaulted Reed for approximately forty-five minutes, until they reached Salado, Texas. Worley further testified that while Reed was being repeatedly raped by McDuff, and forced to perform heinous and vulgar sexual acts, McDuff also beat Reed and burned her several times with a cigarette. Worley continued that McDuff ultimately bound and gagged Reed with shoestrings and placed her in the trunk of the car. Worley testified that he would not give McDuff a shovel and a pocket knife. He further testified that he was driven home and he and McDuff parted ways.

During the punishment phase of the trial, the State presented evidence of McDuff's sixteen prior felony offenses and various members of law enforcement, including Deputy United States Marshal Parnell McNamara and Assistant United States Attorney Ken Dies testified that McDuff had an extreme propensity for violence and that he was generally dangerous.

Also during the punishment phase, the State produced additional evidence that in 1966, McDuff had brutally raped and murdered one teen-age girl and murdered two teen-age boys. Roy Dale Green testified that while he and McDuff drove around Fort Worth, Texas, McDuff told him that "he was going to get him a girl." Green testified that as McDuff approached a parked car carrying a gun and a stick, he was told to wait behind until McDuff beckoned him. Minutes later, Green stated that McDuff told him "they got a good look at me. I am going to have to kill them." It

was at this time, according to Green, that McDuff told him that the two young boys and one girl were locked in the trunk of the car. Green testified that McDuff murdered the young boys execution style by firing several shots into the trunk of the car where the boys had been locked. Green observed that after killing the young boys, McDuff remained "cool calm and collected." Green further testified that after raping the young girl, McDuff used a broomstick to choke her. Green, who held the young girl's legs as McDuff choked her, later turned McDuff in to the authorities.

The only evidence McDuff offered during the punishment phase was the testimony of Wendell Lee Dickerson who testified that McDuff was a person who would not be a future danger in prison as he adapted well to prison life.

The jury convicted McDuff of the capital murder of Northrup and in accordance with Texas law, McDuff was sentenced to death. After the Texas Court of Criminal Appeals affirmed McDuff's sentence and conviction in an unpublished opinion. McDuff v. State of Texas, Slip op. No. 71,700 (Tex.Crim.App. 1997). McDuff filed a petition for writ of certiorari to the United States Supreme Court that was also denied. McDuff v. State of Texas, 118 S.Ct. 702 (1998). The Texas Court of Criminal Appeals subsequently denied McDuff's application for writ of habeas corpus. Then, under 28 U.S.C. § 2254 of the AEDPA, McDuff filed his first application for habeas corpus relief in the United States District Court for the Western District of Texas, setting out twelve claims for habeas

relief.  The State of Texas moved for summary judgment on McDuff's application and the district court granted the State's motion on October 15, 1998.  In response, McDuff filed a notice of appeal, which the district court treated as an Application for Certificate of Appealability and ultimately denied.  Finally, on November 10, 1998, under 28 U.S.C. § 2253, McDuff filed a Request for a Certificate of Appealability with this court, which is the habeas application before us today.

                                    II

     McDuff raises the following seven issues on appeal:

     1.    Is a defendant's right to due process violated where his conviction is based in substantial part on expert testimony which later can be scientifically established to be false, where he probably would not have been convicted without the false testimony?

     2.    Should an petitioner's request for expert assistance be granted, where such assistance is the only means an appellant has to establish his claims, and there is a strong likelihood such assistance may produce exculpatory information?

     3.    Can a petitioner's actual innocence of the crime form the basis of relief in federal court?

     4.    Did appellant adequately exhaust his due process claim based on the use of false evidence, where he alleged he was actually innocent and his execution would therefore constitute a denial of due process?

5.     If appellant's due process claim was not exhausted, did the court err in disposing of it on the merits, instead of remanding the entire case to state court for a decision?

6.     Was petitioner's right to due process, and to be free from cruel and unusual punishment, violated by the failure to instruct the jury that petitioner could not be released on parole until he had served at least forty years?

7.     Was petitioner's right to due process violated by the use of an extraneous offense at the guilt-innocence portion of his trial?

We will address each of McDuff's contentions in turn to determine whether the district court erred in refusing to award him federal habeas relief.

(1)

**Issue 1:  Is a defendant's right to due process violated where his conviction is based in substantial part on expert testimony which later can be scientifically established to be false, where he probably would not have been convicted without the false testimony?**

McDuff contends that his execution would violate his rights to due process because his conviction is based in substantial part on expert testimony that might now be scientifically established to be false.  During McDuff's capital murder trial, one of the State's experts, Charles Linch, testified that McDuff's hair and a hair found on the victim both had the same "extreme Negroid characteristics"--a distinctive pigment clumping, or a heavy dense pigmentation.  The State offered a second hair comparison expert,

Steve Robertson, who also testified that he personally found a hair in the deceased's car that had the same physical appearance as McDuff's hair.

McDuff attacks the State's expert hair comparison as being inaccurate and unreliable. As support for his argument, McDuff asserts that some of the hairs identified by Linch as being similar to his were later DNA tested at the S.E.R.I. Laboratory in California. Of the hairs tested, one hair fragment was determined to have genetic markers different from McDuff's, thereby excluding him as a possible source of the hair. McDuff further contends that advancements in scientific testing, specifically, Mitocondrial DNA testing, now allow experts to test the hair fragments admitted into evidence at his trial, which hairs could not have been previously tested for his DNA. Thus, McDuff reasons that "there is as good as chance as any that the hair comparisons conducted at his trial will be wrong." Given this possibility, McDuff concludes that his rights under the due process clause have been violated by the admission of false testimony at trial.

To establish a due process violation, McDuff must show that: (1) the statements testified to by the State's hair comparison experts were actually false; (2) the State knew that the statements were false; and (3) the statements were material. Blackmon v. Scott, 22 F.3d 560, 565, appeal after remand Blackmon v. Johnson, 145 F.3d 205 (5th Cir. 1998).

McDuff's due process argument fails as a matter of fact and law. There is no evidence in the record that the State's expert testimony linking the hairs found on the deceased's body and in her car to McDuff was false. As previously noted, one of the State's experts testified that McDuff's hair and a hair found on the victim both had the same distinctive pigment clumping. Again, a second expert testified that he discovered hair in the deceased's vehicle that had the same physical appearance as McDuff's hair. What is most compelling, however, is that McDuff's own expert could not dispute the conclusions reached by either of the State's experts. McDuff's expert also testified that McDuff's hair had dense pigment clumping similar to the hairs found on the deceased and in her car. Furthermore, McDuff's expert was never able to exclude him as the possible source of the hairs found on the deceased and in her car.

But McDuff points out that one of the hairs identified by the State's expert as being similar to his was later determined to have genetic markers different from McDuff's. This is true but unavailing because it is undisputed that the State did not rely on this particular hair fragment to establish McDuff's guilt. In fact, the State's expert never testified at trial regarding the fragments of hair determined by the DNA test not to have come from McDuff. Moreover, one of the hair fragments tested for McDuff's DNA did test positive for McDuff's genetic markers, albeit weakly. Given these circumstances, and the extremely consistent testimony

offered from experts on both sides, McDuff's arguments today fail to establish that the expert testimony offered at trial was false.

In any event, McDuff admits that he cannot establish that the State knew that the expert testimony identifying him as the possible source of the hairs found on the victim and in her car was false when it offered the evidence at trial. This failure alone is fatal to his due process claim. Smith v. Black, 904 F.2d 950, 961 (5th Cir. 1990), vacated on other grounds, 503 U.S. 930 (1992) (citing Mooney v. Holohan, 294 U.S. 103, 110, 112 (1935) (per curiam)) ("[t]his circuit has long abided by the standard that the prosecution must have knowingly used the testimony to obtain a conviction for use of perjured testimony to constitute constitutional error"); Skipper v. Wainwright, 598 F.2d 425, 427 (5th Cir.) (per curiam), cert. denied, 444 U.S. 974 (1979) (citing Giglio v. United States, 405 U.S. 150 (1972)). McDuff's request of COA on this issue is therefore denied.

(2)

**Issue 2:    Should a petitioner's request for expert assistance be granted, where such assistance is the only means a petitioner has to establish his claims, and there is a strong likelihood such assistance may produce exculpatory information?**

McDuff next contends that the state court should have granted his request for expert assistance because such assistance is the only means he has to establish his claims, and there is a strong likelihood that such assistance may produce exculpatory information. Without the subsequent expert testing, McDuff

-11-

contends that the accuracy of the hair comparison expert testimony introduced at his trial will never be known.

To the extent that McDuff requests expert assistance to refute the accuracy of the expert testimony as well as to discover other exculpatory evidence, he fails to make a substantial showing of a denial of a constitutional right and thus raises no cognizable constitutional claim warranting federal habeas relief. See Drinkard v. Johnson, 97 F.3d 751, 770 (5th Cir. 1996), cert. denied, __ U.S.__, 117 S.Ct. 1114, 137 L.Ed.2d 315 (1997). In short, McDuff raises no constitutional error in the state court trial.

(3)

**Issue 3:  Can a petitioner's actual innocence of the crime form the basis of relief in federal court?**

McDuff's third argument is that his actual innocence of the crime should form the basis of habeas relief in federal court. McDuff concedes that generally the discovery of new evidence will not establish a constitutional violation. He nonetheless argues that the Fourteenth Amendment's due process clause and the Eighth Amendment warrant a different result when part of the State's testimony is established to be false. We need go no further in addressing this argument than to reiterate our earlier conclusion that the expert testimony offered at McDuff's trial was not in fact false.

-12-

Nevertheless, it has long been the rule that "claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." Lucas v. Johnson, 132 F.3d 1069, 1074 (5th Cir. 1998) (citing Herrera, 506 U.S. at 400). In pressing this point, McDuff has not argued a constitutional violation in the underlying criminal proceeding. Therefore, McDuff's actual innocence claim is virtually identical to the one made in Herrera and thus does not present grounds for habeas relief. Id.; Herrera, 506 U.S. at 398-400.

McDuff, nonetheless, attempts to distinguish his argument for a COA on the grounds that his claim of actual innocence--that one Charles Gatlin committed the murder and not he--is not based on new evidence, but on evidence that he acknowledges he was aware of at trial but chose to reject for tactical reasons at that time. McDuff reasons that if, under the new method of DNA testing, the hairs can be identified as not coming from him, then he has a much stronger claim of innocence. McDuff therefore concludes that it is not merely the evidence concerning Gatlin, but possible additional evidence resulting from the DNA testing of the hairs found in the victim's car and on her body that may support his claim.

We find this argument unavailing. "Even if a claim of actual innocence is cognizable under federal habeas corpus, [without McDuff showing an underlying constitutional violation in the trial

-13-

court proceedings below,] the accumulation of evidence that tracks and corroborates the evidence presented at trial and that largely was available at the time of trial, does not qualify to meet the extraordinarily high threshold as newly discovered evidence demonstrating actual innocence that is necessary to suggest a federal constitutional right arising from this Texas conviction." Lucas, 132 F.3d at 1076 n.3 (emphasis added).

Finally, to the extent that McDuff argues that the due process clause and the Eighth Amendment should be extended to accommodate his actual innocence claim, this request is barred as an improper request for recognition of a new constitutional rule on collateral review.    Teague v. Lane, 489 U.S. at 288, 300-311 (1989). Consequently, McDuff has failed to make any showing that his claimed actual innocence justifies federal intervention.

(4)

**Issue 4:  Did appellant adequately exhaust his due process claim based on the use of false evidence, where he alleged he was actually innocent and his execution would therefore constitute a denial of due process?**

The district court concluded that McDuff's claim in this regard is procedurally barred.  We have addressed the substance of McDuff's due process claim--that the State's expert testimony identifying him as the possible source of the hair fragments found on the victim and in her car was false--and found it entirely meritless.  As discussed earlier, there exists no proof in the record to support McDuff's claim that the expert testimony was

-14-

indeed false.  Second, McDuff concedes that he cannot establish that the State knew that the expert testimony offered at his trial was false.  Because he is unable to make these requisite showings, McDuff's due process claim fails as a matter of law.  <u>Giglio v. United States</u>, 405 U.S. 150, 153-54 (1963); <u>Blackmon</u>, 22 F.3d at 565.  Even more telling, McDuff admits that DNA testing establishing that the hair did not come from him would not, in fact, establish his innocence.  Given these circumstances, McDuff has failed to demonstrate the denial of a federal constitutional right necessary to entitle him to a certificate of appealability.  McDuff's argument on appeal that he exhausted his state remedies is therefore mooted.

(5)

**Issue 5:    If appellant's due process claim was not exhausted, did the court err in disposing of it on the merits, instead of remanding the entire case to state court for a decision?**

Alternatively, McDuff asserts that even if his due process claim was not exhausted, the district court erred in disposing of the claim on the merits.  McDuff argues that under <u>Rose v. Lundy</u>, 455 U.S. 509 (1982), the proper course for the district court was to remand the entire case to the state court for a decision.

This argument is meritless.  An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.  28 U.S.C. § 2254 (b)(2).

-15-

**Issue 6: Was petitioner's right to due process, and to be free from cruel and unusual punishment, violated by the failure to instruct the jury that the petitioner could not be released on parole until he had served at least forty years?**

McDuff next contends that the trial court improperly denied his request for a jury instruction that, under Texas law, a defendant receiving a life sentence for capital murder was required to serve at least forty years before becoming eligible for parole.

The trial court was not required to instruct the jury as McDuff requested.  The Federal Constitution neither requires the state of Texas to give jury instructions regarding parole eligibility, nor does it prevent it from doing so.  See California v. Ramos, 463 U.S. 992 (1983).  As such, Texas has traditionally kept information about a capital defendant's parole ineligibility from the sentencing jury.

We are aware that in Simmons v. South Carolina, 512 U.S. 154, 157 (1994), the Supreme Court held that due process requires a jury to be informed that a defendant is ineligible for parole when future dangerousness is at issue in the penalty phase of a capital murder trial, and where state law altogether prohibits the defendant's release on parole.  Texas, however, does not have a life-without-parole sentencing alternative to capital punishment.  Moreover, the Simmons Court makes clear that its holding does not invalidate Texas' prohibition against informing juries about the parole implications of a life sentence in a capital case.  See

-16-

<u>Simmons</u>, 512 U.S. at 168 ("in a state in which parole is available, how the jury's knowledge of parole eligibility will affect the decision whether or not to impose the death penalty is speculative, and we shall not lightly second-guess a decision whether or not to inform the jury in information regarding parole").  Consequently, McDuff cannot demonstrate that his rights under the due process clause have been abridged by the trial court's refusal to inform the jury that he must serve at least forty calendar years before becoming eligible for parole.

Second, because McDuff's Eighth Amendment argument does not turn on the admission or exclusion of any categories of potentially relevant mitigating evidence, i.e., evidence of his character and record, and the circumstances of the crime, the trial court's refusal to give the requested parole instruction does not violate the Eighth Amendment.  <u>See</u> <u>Smith v. State</u>, 898 S.W.2d 838, 853 (Tex.Crim.App. 1995)(state's parole laws are not in any way part of capital defendant's character, record, or circumstances of the offense).

(7)

**Issue 7:  Was the petitioner's right to due process violated by the use of an extraneous offense at the guilt-innocence portion of his trial?**

Finally, McDuff argues that his due process rights were violated by the use of an extraneous offense at the guilt-innocence portion of his trial.  Relying on the accomplice-witness rule under Texas law, McDuff contends that it was error to allow Alva Hank

-17-

Worley to testify regarding McDuff's murder of Colleen Reed. McDuff reasons that the State failed to prove he committed the murder of Colleen Reed beyond a reasonable doubt because Worley was an accomplice to Reed's murder and his testimony alone could not form the basis for a conviction against him.

Even if the trial court's admission of Worley's testimony violated Texas' accomplice-witness rule, the violation nonetheless provides no basis for federal habeas relief. The accomplice-witness rule is a state procedural rule that has no independent constitutional basis. Brown v. Collins, 937 F.2d 175, 182 n.12 (5th Cir. 1991). Federal habeas relief is not available to correct errors that are based solely upon state constitutional, statutory or procedural law issues. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

CONCLUSION

We therefore conclude that Kenneth Allen McDuff has failed to make a substantial showing of a denial of a constitutional right that would entitle him to federal habeas relief. His application for a certificate of appeal is hereby DENIED and his request for a stay of execution is therefore DENIED.

CERTIFICATE OF APPEALABILITY DENIED;
MOTION TO STAY EXECUTION DENIED.